IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAIMEA BAY ASSOCIATES ONE, LLC, )<br><br>            Plaintiff,      )<br>                              )<br>       vs.                    )<br>                              )<br>PETER YOUNG in his official   )<br>capacity as Chairman of the   )<br>Board of Land and Natural     )<br>Resources and Director of the )<br>Department of Natural Resources )<br>of the State of Hawaii; and    )<br>TARYN R. SCHUMAN, GERALD L.   )<br>DeMELLO, RON AGOR, TIMOTHY    )<br>JOHNS, SAMUEL M. GON III, and )<br>JERRY EDLAO in their official )<br>capacities as members of the  )<br>Board of Land and Natural     )<br>Resources of the State of     )<br>Hawaii,                       )<br>                              )<br>            Defendants.       )<br>                              )<br>                              )<br>_____ ) | CIVIL NO. 05-00764 HG BMK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION** |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
AND DISMISSING ACTION**

Plaintiff Waimea Bay Associates One, LLC ("Plaintiff"), has

sued Defendant Peter Young, in his official capacity as Chairman

of the Board of Land and Natural Resources ("BLNR") and Director

of the Department of Land and Natural Resources of the State of

Hawaii ("DLNR"), along with individual board members of the BLNR

(collectively, "Defendants".)[1]   Plaintiff's action challenges a regulation affecting certain lands within the state land use conservation district.

Plaintiff owns property within the "Limited subzone" of the conservation district.  BLNR regulations restrict permitted land uses within the Limited subzone.  The challenged land use regulation, H.A.R. § 13-5-23(L-6), sets forth one of the permitted uses for land within the Limited subzone.  H.A.R. § 13-5-23(L-6) allows for the construction of single family residences within floodplains and coastal high hazard areas when granted permit approval from the BLNR.  In addition to lands within floodplains and coastal high hazard areas, the Limited subzone includes lands susceptible to volcanic activity, landslides, or which have a general slope of forty percent or more.

Plaintiff claims that there is no rational basis for allowing permit applications for the construction of single family residences within floodplains and coastal high hazard areas but not within other areas of the Limited subzone and that

---

[1] Plaintiff originally named Ted Yamamura and Toby Martyn as defendants in their official capacity as members of the BLNR.  At the May 22, 2006 hearing, Defendants' counsel represented that Ted Yamamura and Toby Martyn were no longer members of the BLNR and that Samuel M. Gon, III and Jerry Edlao have taken their places on the BLNR.  The Court substitutes Samuel M. Gon, III and Jerry Edlao, in their official capacities as members of the BLNR, for Ted Yamamura and Toby Martyn as Defendants in this case and has amended the case caption accordingly.  See Fed. R. Civ. P. 25(d).

H.A.R. § 13-5-23(L-6) therefore violates the equal protection
clause of the Fourteenth Amendment of the United States
Constitution.   The Court holds that Defendants have shown a
rational basis for H.A.R. § 13-5-23(L-6).   Plaintiff's Motion for
Summary Judgment is **DENIED**.   Defendants' Counter-Motion for
Summary Judgment is **GRANTED**.   The action is **DISMISSED**.

## PROCEDURAL HISTORY

Terry Taguchi Yamate, the manager for Plaintiff, originally
filed this action against Linda Lingle, in her official capacity
as governor of the State of Hawaii.   Governor Lingle moved to
dismiss and Yamate moved for summary judgment and for leave to
amend the complaint.   On February 2, 2006, the Court issued an
order granting Defendant's motion to dismiss and dismissing all
claims against Governor Lingle with prejudice.   The Court denied
Yamate's motion for summary judgment and for leave to amend the
complaint as proposed, but gave Yamate until March 6, 2006 to
file an amended complaint.   The owner of the property at issue in
this case is now Plaintiff.

On February 24, 2006, Plaintiff filed a First Amended
Complaint, facially challenging H.A.R. § 13-5-23(L-6) on the
grounds that it violates Plaintiff's right to equal protection
under the Fourteenth Amendment to the United States Constitution.

On March 22, 2006, Plaintiff filed its Motion for Summary
Judgment ("Motion") and separate concise statement of material

3

facts in support ("Plaintiff's SCSF").

On May 3, 2006, Defendants filed their Opposition to Plaintiff's Motion for Summary Judgment and Counter-Motion for Summary Judgment ("Opposition") and separate concise statement of material facts in support ("Defendants' SCSF").

On May 11, 2006, Plaintiff filed its reply.

On May 16, 2006, Defendants filed their reply.

On May 22, 2006, this matter came on for hearing.

## BACKGROUND

There are four major land use districts in which all lands in Hawaii are placed:  urban, rural, agricultural, and conservation.  Haw. Rev. Stat. § 205-2.  Haw. Rev. Stat. § 183C-3, in part, grants the Hawaii Department of Land and Natural Resources ("DLNR") and the Board of Land and Natural Resources ("BLNR") the power to "[e]stablish and enforce land use regulations on conservation district lands . . . "  Pursuant to that statute, the BLNR adopted Title 13, Chapter 5, Hawaii Administrative Rules (H.A.R.) that establishes subzones within the conservation district and restricts land uses permitted within each of those subzones.  H.A.R. § 13-5-10.  The subzone at issue in this case is the Limited subzone.  The objective of the Limited subzone "is to limit uses where natural conditions suggest constraints on human activities."  H.A.R. § 13-5-12. The Limited subzone encompasses lands susceptible to floods,

4

erosion, volcanic activity, and other natural hazards.  H.A.R. §

13-5-12.   H.A.R. § 13-5-12 <u>Limited (L) subzone</u> provides:

>           .    .    .
>
> (b) the (L) subzone shall encompass:
>
> (1)   Land susceptible to floods and soil erosion,
> lands undergoing major erosion damage and requiring
> corrective attention by the county, state, or
> federal governments; and
>
> (2)   Lands necessary for the protection of the
> health, safety, and welfare of the public by reason
> of the land's susceptibility to inundation by
> tsunami, flooding, volcanic activity or landslides,
> or which have a general slope of forty percent or
> more.
>
>           .    .    .

Land uses permitted in the Limited subzone are restricted to

those uses listed in H.A.R. § 13-5-23.   Whether a landowner

needs a permit, and, if so, what type of permit, depends on the

type of land use contemplated.  H.A.R. § 13-5-23(c)(1)-(4).

H.A.R. § 13-5-23(L-6) provides that an applicant may apply

to the BLNR for a permit to construct:

> A single family residence ***in a floodplain or
> coastal high hazard area that conforms to
> applicable county regulations regarding the
> National Flood Insurance Program*** and single family
> residential standards as outline in this chapter.

H.A.R. § 13-5-23(L-6) (emphasis added).

Plaintiff is the owner of property within the Limited

subzone.  (Plaintiff's SCSF at ¶ 6 and Declaration of Terry

Taguchi Yamate dated Mar. 22, 2006.)  Plaintiff wants to build a

5

residence on the subject property.  Plaintiff contends that, while the property is in a Limited subzone, no part of the subject property is in a floodplain or coastal high hazard area and that, for this reason, it cannot apply for a permit to construct a single family residence on the subject property. (First Amended Compl. at ¶¶ 11-15.)

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party

6

must show, however, that there is no genuine issue of material
fact and that he or she is entitled to judgment as a matter of
law.  That burden is met simply by pointing out to the district
court that there is an absence of evidence to support the
nonmovant's case.  <u>Id.</u>

   If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
<u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial.  Fed.
R. Civ. P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d
1044, 1049 (9th Cir. 1995).  "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted."  <u>Nidds</u>, 113 F.3d at 916 (quoting <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

   The court views the facts in the light most favorable to the
non-moving party.  <u>State Farm Fire & Casualty Co. v. Martin</u>, 872
F.2d 319, 320 (9th Cir. 1989).

   Opposition evidence may consist of declarations, admissions,
evidence obtained through discovery, and matters judicially
noticed.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324.  The
opposing party cannot, however, stand on its pleadings or simply
assert that it will be able to discredit the movant's evidence at

trial.  Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.

The opposing party cannot rest on mere allegations or denials.

Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins.</u>

<u>Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing

party rest on conclusory statements.  <u>National Steel Corp. v.</u>

<u>Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

<u>**ANALYSIS**</u>

**I.   The Rational Basis Standard**

Plaintiff challenges H.A.R. § 13-5-23(L-6) as facially

invalid, claiming it violates the Plaintiff's equal protection

rights under the United States Constitution.  "The Equal

Protection Clause of the Fourteenth Amendment commands that no

State shall "'deny to any person within its jurisdiction the

equal protection of the laws,' which is essentially a direction

that all persons similarly situated should be treated alike."

<u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432,

439 (1985)(citation omitted).  "An equal protection attack on

zoning will typically focus on whether the differential treatment

is rationally related to the advancement of some legitimate

police power objective."  <u>Kinzli v. City of Santa Cruz</u>, 539 F.

Supp. 887, 894 (N.D. Cal. 1982).  States and counties generally

have broad discretion when it comes to the enactment of land use

and zoning laws and regulations.  <u>See</u> <u>Ehrlich v. City of Culver</u>

<u>City</u>, 911 P.2d 429, 447 (Cal. 1996)  ("The general purpose of

zoning and planning is to regulate the use of land to promote the public welfare, a power the courts have construed very broadly").

"Equal protection is not denied simply because an ordinance treats one class of persons differently from another.  Where there is no suspect classification, and purely economic interests are involved, a municipality may impose any distinction which bears some 'rational relationship' to a legitimate public purpose. . . . Courts consistently defer to legislative determinations as to the desirability of such distinctions. . . . The ordinance will be upheld so long as the issue is 'at least debatable.'"   Suter v. City of Lafayette, 67 Cal.Rptr.2d 420, 434 (Cal. App. 1 Dist. 1997) (citations omitted); see Cleburne Living Center, 473 U.S. at 440 (statute or regulation will be presumed valid and sustained against an equal protection challenge if "the classification drawn ... is rationally related to a legitimate state interest").

A party challenging a statute or regulation on equal protection grounds has a high burden.  In Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307 (1993), the United States Supreme Court explained the limitations on judicial review:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices . . . Where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.' [citation omitted].  This standard of review is a paradigm of judicial restraint.  The Constitution presumes that, absent some reason to infer

9

> antipathy, even improvident decisions will
> eventually be rectified by the democratic process
> and that judicial intervention is generally
> unwarranted no matter how unwisely we may think a
> political branch has acted. [citations omitted].

Id. at 313-14; see id. at 315 ("a legislative choice is not

subject to courtroom fact-finding and may be based on rational

speculation unsupported by evidence or empirical data").

Rational basis review is a two-step process. See Watson v.

Perry, 918 F. Supp. 1403, 1412 (W.D. Wash. 1996) (citing Jackson

Water Works, Inc. v. Public Utilities Comm'n, 793 F.2d 1090, 1094

(9th Cir. 1986)).  The court determines (1) whether the

challenged classification serves a legitimate government purpose

and; (2) if so, whether the discriminatory classification is

rationally related to the achievement of that legitimate purpose.

Id. at 1412.

## II.   The Conservation District Serves a Legitimate State Interest

To understand the purpose of the conservation district and

the particular land use classification at issue in this case, the

Court first looks to the general policies underlying Hawaii land

use law.  The stated purpose of the Hawaii land use law is, *inter

alia*:

> to protect and conserve through zoning the urban,
> agricultural and conservation lands within all the
> counties.  A coordinated, balanced approach not
> only within each county but an overall balance of
> statewide land needs for economic growth is
> essential in order to:
>
> (1) Utilize the land resources in an intelligent,

effective manner based upon the capabilities and
characteristics of the soil and the needs of the
economy;

(2) Conserve forests, water resources and land,
particularly to preserve the prime agricultural
lands from unnecessary urbanization;

(3) State the allocation of land for development in
an orderly plan to meet actual needs and minimize
costs of providing utilities and other public
services

*    *    *

In the establishment, enforcement and change in
these areas and these regulations, existing county
planning organizations will be consulted, plans
coordinated, and facilities and special knowledge
utilized. The powers of the counties to make and
change detailed zoning within the major land use
areas established by the state will not be changed
but should in fact be strengthened by the
supporting state power.

Hse. Stand. Comm. Rep. No. 395, in 1961 House Journal, at 855-56;

1961 Haw. Sess. L. Act 187, § 1 at 299 ("[I]n order to preserve,

protect and encourage the development of the lands in the State

for those uses to which they are best suited for the public

welfare ..., the power to zone should be exercised by the

State."); see Curtis v. Board of Appeals, County of Hawai'i, 978

P.2d 822, 834 (Haw. 1999).

     The state land use laws divide land into various districts.

In establishing the land use conservation district, the

legislature intended "to conserve, protect, and preserve the

important natural resources of the State through appropriate

management and use to promote their long-term sustainability and

11

the public health, safety and welfare."  Haw. Rev. Stat. § 183C-1.  Haw. Rev. Stat. § 183C-4(d) requires the DLNR to establish zones within the conservation district that are restricted to certain uses.  The DLNR has discretion to determine the appropriate land uses permitted within each zone.  Pursuant to Haw. Rev. Stat. § 183C-3(2) and (3), the BLNR adopted the regulations contained in Title 13, Chapter 5, which established a scheme for classification of conservation district lands into subzones, including the Limited subzone at issue in this case. H.A.R. § 13-5-10.

Courts have generally recognized that land use regulations, including regulations enacted to conserve and protect natural resources, serve a legitimate state interest.  See Furey v. City of Sacramento, 592 F. Supp. 463, 471 (E.D. Cal. 1984) ("The public's interest in the City's open space zoning is its interest in the preservation and conservation of valuable, and disappearing, open space land.  . . . Such an interest is not only legitimate but also substantial.") (citing Agins v. City of Tiburon, 447 U.S. 255, 261 (1980)).  Plaintiff does not argue or otherwise demonstrate that the state does not have a legitimate interest in enacting land use laws and in establishing a conservation district.  The first prong of the rational basis test is satisfied.

The question then becomes whether H.A.R. § 13-5-23(L-6) is rationally related to the land use policies set forth above,

including the conservation of important natural resources of the
State and the promotion of public health, safety, and welfare.
See <u>Christensen v. Yolo County Board of Supervisors</u>, 995 F.2d
161, 165-166 (9th Cir. 1993) (finding city's and county's decision
to adopt zoning agreement rationally related to promotion of the
public health, safety, and welfare).

**III. There Is a Rational Basis for the Rule Identifying Single
Family Residences as Potential Permitted Uses Only in
Floodplains and Coastal High Hazard Areas Within the Limited
Subzone**

In order to protect important natural resources and to
account for constraints on development imposed by natural
conditions, the BLNR limited potentially permitted uses within
the Limited subzone.  Single family residences are generally not
allowed in the Limited subzone.  The only exception is for single
family residences in "a floodplain or coastal high hazard area
that conforms to applicable county regulations regarding the
National Flood Insurance Program and single family residential
standards."  H.A.R. § 13-5-23(L-6).

Plaintiff claims that there is no rational basis for
permitting persons to apply for permits to build single family
residences in floodplains and coastal high hazard areas but not
elsewhere within the Limited subzone.  In response, the
Defendants have advanced several reasons why H.A.R. § 13-5-23(L-
6) is rationally related to the state's legitimate interests.

If it is "at least fairly debatable" that the decision to adopt
H.A.R. § 13-5-23(L-6) was rationally related to legitimate
interests, the Court must uphold H.A.R. § 13-5-23(L-6).
<u>Christensen</u>, 995 F.2d at 165 (citation omitted).

        Defendants contend that H.A.R. § 13-5-23(L-6) creates parity
between state land use conservation regulations and county
building regulations.  H.A.R. § 13-5-23(L-6) allows for a person
to apply for a BLNR permit where the construction of a single
family residence is otherwise permitted by county regulations.
Defendants point out that while the primary objective of the
conservation district statutes and regulations is to protect
natural resources and ecosystems, county zoning ordinances and
regulations are primarily concerned with the safety of humans and
structures.  County regulations may permit building within a
floodplain or coastal high hazard area if certain standards are
met to protect personal safety and physical structures.  In its
October 1997 Conservation District Management Plan (Discussion
Draft) ("Draft Plan"), the DLNR explained that H.A.R. § 13-5-
23(L-6) "was based on the theory that flood hazards (to
structures) are adequately addressed by county flood
regulations."  (Defendants' Opp. at Declaration of Samuel J.
Lemmo at Exhibit 2.)  The construction of a single family
residence in an area susceptible to flood or coastal inundation
does not necessarily result in harm to the land or ecosystem even
though it may carry with it an increased risk of loss of life and

14

buildings.   During the permit process, the BLNR makes an
independent determination as to whether a single family residence
is permitted in accordance with the goals of the conservation
district and the Limited subzone.

Allowing persons to apply for permits to construct single
family residences within floodplains and coastal high hazard
areas recognizes the interrelationship between state and county
regulations.   A coordinated and balanced approach between state
and county regulations is one of the stated purposes of Hawaii
land use law.   Coordination between state and county regulations
furthers the state's legitimate interest in conserving important
natural resources while promoting the public health, safety, and
welfare.

The Defendants submit that H.A.R. § 13-5-23(L-6) also
accounts for the fact that county regulations allowed for the
construction of single family residences within floodplains and
coastal high hazard areas before the creation of the conservation
district.   In adopting the conservation district regulations, the
BLNR explained that some of the important provisions of H.A.R.
Title 13, Chapter 5 include:

> [A]llowance for single family residences in the
> Limited Subzone where parity between the
> Conservation District lands and those lands under
> county jurisdictions are addressed, given adherence
> to National Flood Insurance Program Requirements.
> There are existing residential communities within
> the Limited Subzone of the Conservation District,
> such as Haena, Kauai and Mokuleia, Oahu, where
> subzone restrictions are considered inappropriate.

15

Department of Land and Natural Resources Staff Submittal (Item H-1), Adoption of Title 13, Chapter 5, Hawaii Administrative Rules Relating to the Conservation District, Nov. 18, 1994 (Defendants' Opp. at Declaration of Samuel J. Lemmo at Exhibit 1.) Consideration of pre-existing land uses is a legitimate reason to distinguish between different types of lands within the Limited subzone and is also consistent with the state's goal of a coordinated and balanced approach to land use regulation.

At the hearing, Defendants also argued that the DLNR may have determined that the construction of single family residences in floodplains and coastal high hazard areas in compliance with county regulations pose less of a threat to the natural resources within the Limited subzone than the construction of single family residences within other areas of the Limited subzone. This is also a rational basis for limiting the exception to floodplains and coastal high hazard areas consistent with the state's legitimate interests. See Christy v. Hodel, 857 F.2d 1324, 1328 n.2 (9th Cir. 1988) ("In assessing whether challenged legislation rationally furthers a legitimate governmental goal, the court will consider not only the basis on which the legislature actually acted, if ascertainable, but also *any hypothetical basis* on which it might have acted . . . Since the court itself may postulate a basis for the legislation, satisfaction of the rationality test should be deemed a legal, rather than a factual,

16

issue.") (emphasis original).

Based on the above reasons, the Court holds that H.A.R. §
13-5-23(L-6) is rationally related to the state's legitimate
interests.

**IV.  Plaintiff's Requested Remedy Is Not Available**

The remedy requested by Plaintiff is not available.
Plaintiff asks the Court to sever portions of H.A.R. § 13-5-23(L-
6) so that it is not limited to floodplain or coastal high hazard
areas and would allow "[a] single family residence that conforms
to applicable county regulations and single family residential
standards as outlined in this chapter."   Severability is an
issue of state law.  See City of Auburn v. Qwest Corp., 260 F.3d
1160, 1180 (9th Cir. 2001).   In Hawaii "[t]he general rule of
law concerning the concept of severability is that if any part of
a statute is held invalid, and if the remainder is complete in
itself and is capable of being executed in accordance with the
apparent legislative intent, then the remainder must be upheld as
constitutional."  State v. Bloss, 613 P.2d 354, 358 (Haw. 1980)
(citing Territory v. Tam, 36 Haw. 32 (1942)); see Qwest
Communications, Inc. v. City of Berkeley, 433 F.3d 1253, 1259
(9th Cir. 2006) (severability clause should be applied only when
"the remainder of the enactment is complete in itself and would
have been adopted without the invalid portion") (applying
California law).

If the Court were to sever H.A.R. § 13-5-23(L-6) as proposed

17

by Plaintiff, it would increase the number of applicants for
single family residential permits within the Limited subzone.
This is directly contrary to the legislative purposes stated in
Haw. Rev. Stat. § 183C-1 and H.A.R. § 13-5-12 to preserve fragile
ecosystems and limit uses where the natural conditions suggest
constraints on human activities.

   Plaintiff is not without a remedy.  Plaintiff could, for
example, petition for a subzone reclassification or for an
administrative rule change.  <u>See</u> H.A.R. § 13-5-23.

<u>**CONCLUSION**</u>

   The Court holds that Haw. Rev. Stat. § 13-5-23(L-6) is not
facially unconstitutional under the equal protection clause of
the Fourteenth Amendment of the United States Constitution
because it is rationally related to the state's legitimate
interests.

   For the foregoing reasons,

   (1)   Samuel M. Gon III and Jerry Edlao, in their official
         capacities as members of the BLNR, are substituted for
         Ted Yamamura and Toby Martyn as Defendants.

   (2)   Plaintiff's Motion for Summary Judgment is **DENIED** (Doc.
         16);

   (3)   Defendants' Counter-Motion for Summary Judgment is
         **GRANTED** (Doc. 22);

   (4)   The action is **DISMISSED**.

18

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 5, 2006.



    _/s/ Helen Gillmor_____
Chief United States District Judge

WAIMEA BAY ASSOCIATES ONE, LLC v. PETER YOUNG, in his official capacity as Chairman of the Board of Land and Natural Resources and Director of the Department of Natural Resources of the State of Hawaii, _et al._; Civ. No. 05-00764 HG-BMK; **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION**